The first case on the oral argument calendar for this session is Church v. Berry. Terry Kaiser Cooper for Appellant Jeffrey Church. I'd like to reserve two minutes, please. Mr. Church spoke out on matters of public concern in two separate areas. The first area he spoke out was his speech to the courts from 1983 to 1999, 17 years regarding City of Reno's violations of federal military law. It is inherently a matter of public concern whether city governments are violating federal law. You know, I could agree with you, and so did the district court. The question really in the case boils down to whether it was a substantial factor in the adverse action that was taken. The district court said there's no evidence that there's causation. All right, let me address causation. We know that the defendants opposed Mr. Church's speech regarding the rights of city military employees because for three reasons, essentially. They fought him in every federal court action, even when they didn't have to. He was granted a consent decree, and part of the consent decree was that he, the City of Reno, file a policy regarding reservists and guardsmen. Two years went by. They refused. They wouldn't file it. He files a contempt action on it, which City of Reno loses. It's obvious they're going to lose because the court order said you've got to file a policy. They refused to file a policy. My point is that they fought him on every action for over 17 years. That's opposition to speech. But then he went into the military, and he came back, and there were all these evaluations of fitness for duty, and instead of going to the Civil Service Commission, he just basically left. He is not required to go to the Civil Service Commission. The evaluations found that he was not able to return to work. Also, let me return to his opposition to speech. What happened in temporal proximity to the events? I realize there's this long history, but what's the best evidence you have that there was something that happened, that he spoke out just before these events and there was retaliation because of that speech? All right. Well, first we can't ignore that he had almost 20 years of speech opposing the City of Reno. That's Judge Thomas' question. Okay. What happened in temporal proximity? Temporal proximity for 2001, 2002, and 2003, he spoke out about the City of Reno's the actual wrongdoing by city RPD, Reno Police Department officials and city government officials, refusing to understand the escalating harassment and hostility that he was facing at the police department with the knowledge and approval of city officials and Reno officials. He was speaking out in all those years, even the last year. He spoke out shortly before he was terminated. He issued letters to city government people saying they are harassing me, they are being hostile to me, I want to use the workplace violence policy. He gets a bullet. They tell him it's a joke. They paint a target on the back of his vest. They tell him it's a joke. Can't you take a joke, they say. He wanted to have his work environment safe for him. He wanted, and his doctors and the doctor for the City of Reno both said, he should not return to work until and unless it's a safe environment. The City of Reno hired somebody, and that's what they said. This happened in 2001, 2002, and 2003. So I guess the speech in which you're relying in proximity to the events are his complaints about retaliation. Is that right? That's correct. And why is that a matter of public concern? Okay. His speech to policymakers, and he made it to policymakers, regarding escalating harassment and hostility within the police department is a matter of public concern because people care about whether there's supervisory tolerance in a police department for escalating coworker harassment and hostility to the extent that an officer feels unsafe in doing his job. It's a matter of public concern because people care whether an officer is so worried about his personal safety that he won't be able to protect them. It is essential that officers be able to complain about misconduct by other officers, and legitimate officer safety issues. Make no mistake, this was actual wrongdoing that he was reporting. Other officers threatening to kick his ass, to beat him up, giving him a bullet, painting a target on the back of his ass. He was reporting that, he was complaining about that, and he was complaining what amounted to a custom and practice by officials of condoning escalating hostility by his coworkers. The city of Reno ignored that. The only issue that's here is the First Amendment issue. That's correct, Your Honor. Because you had a constructively discharged theory, and the court below said there's no evidence to suggest that. You had a right to appeal to the Civil Service Commission, and so that's gone. So he was not constructively discharged. Well, we're arguing that he was. Constructive discharge means that he can't take it any longer. The city of Reno issued him an ultimatum. First of all, they sent him to this doctor. The doctor says he's not fit to return to work because he perceives, and he's reasonable in his perceptions, that he may be harmed. Don't you now have a judgment that he was not constructively discharged? No, we don't. We contend that that's an adverse action. When his own doctor and the city of Reno's own doctor find that he is unable to return to the work environment, and the city of Reno ignores that and says that he's got to return, or he can quit, or they're going to fire him, that is an ultimatum. He could not do his job that was so intolerable for him that he was unable to return to his job. It's not like no one found he was being reasonable. Causation can also be proved not only by opposition to speech. The judge essentially found there was no causation. We know that they opposed him all these years, and you can't ignore that. It didn't take place in a vacuum. You're talking about the day, but there are individual defendants in this case. So how about Police Chief Hoover? What's your best evidence that he personally participated in a deprivation of right to cause the damage? All right, well, he was personally named in the lawsuits that was filed against the city of Reno. He was aware of the custom and practice of condoning harassment because my client wrote him, copied him with letters that he also sent to Defendant McNeely, the city manager, and he said, all of these things are going on. I understand. Your client complained to these folks, the city manager and the police officer, but what evidence do you have that they participated in the deprivation of right? They were on the committee that did away with the task force to change the workplace violence policy. Both McNeely and Hoover were on that. He tried to use the workplace violence policy, which was designed expressly for the purpose he tried to use it, and they told him they eliminated it when he tried to use it. You can't ignore, as Kozolter tells us, on a strict reliance on timing. This speech went on for more than 20 years, and it was condoned, it was approved by coworkers, it was approved by his evaluator who wrote an evaluation and said, Mr. Church should expect that his coworkers are going to be hostile and sarcastic to him because he takes leaves because of his military duty. They all knew about that. They all resented him doing that. They were deliberately indifferent to his fears regarding his personal safety. When his doctor said it was reasonable to fear, an officer to fear when he gets a target painted on his vest. What adverse employment action did Deputy Chief Berry take? I will concede that Berry and Donnelly are weaker. Berry was the one that said the bullet is a joke. Berry is the one that said a target painted on the back of his vest was a joke, and that why can't he take a joke. That's what Berry did. Donnelly was the one that gave him the bullet. All my client wanted was an independent evaluation because he had a legitimate fear. He had five officers threatened to physically harm him. He was denied cover. He had supervisors present when they tried to physically harm him. When he gets presented at an awards ceremony with a live .45 caliber hollow point bullet as a token of the esteem of the police department, he has a reasonable right to fear these officers want to harm him. He was reasonable to perceive a target painted on the back of his vest as a physical threat to him. All he wanted was someone to check out this. The police department refused to investigate it. When he tried to use the workplace violence policy, they eliminated the policy. You have about 50 seconds left. Do you want to save some for rebuttal? Yes. I wanted to save two minutes. I'm sorry. Thank you. Good morning. Donnell Christensen for appellees and defendants in this case. In 1983, Mr. Church brought his first case against the city, claiming that it was not properly administering military benefits for military reservists. The city ended up entering into a consent decree in that case. Over the next 20 years, Sergeant Jeff Church was promoted to the position of sergeant. There was never any action taken to terminate his employment. There was never action taken to suspend him without pay. There was no action taken to demote him. There was no action taken to involuntarily transfer him or a reduction in duties. No actions of any sort of that nature were taken against him in the remaining 20 years of his employment. It seems to me you have a judgment in your favor, holding that he wasn't constructively discharged, that wasn't appealed. The primary finding of the district court was that there was no causation element. Yeah, but there was a complaint for bad faith discharge, constructive termination, and that was determined in your favor. And that's conclusive and it's not appealed. I agree. With respect to the questions that the panel was posing with respect to causation, the elements that one ordinarily looks at is, is there any temporal proximity? There was some protected speech, obviously, I believe, that the district court found, and we agree, the 1983 suit, the suits that were brought to enforce other people's rights besides those specifically of the plaintiff involving his individual personnel disputes. There's no temporal proximity of any sort between any of those lawsuits and action that he complains of here. There's no expressed opposition. There's no evidence in the record anywhere over 20 years of any comments that anyone made that because you made those laws, brought those lawsuits against the city or any of these defendants, that that's why anything is being done to you. There's no evidence of that sort in the record. And the final ordinary fact that one looks to for temporal proximity is whether the reasons for adverse employment action taken were shown to be false, and there's no evidence in the record of that. Appellant's counsel referred to the fact that the city defended itself against lawsuits that were brought by the plaintiff. She cited no authority to show that that amounts to opposition to one's right to bring the lawsuits. There's no authority of any sort of that presented. She says that with respect to the 1989 action, I believe it was, to enforce the original consent decree, where the city had not yet promulgated a policy that it agreed to do when it entered into the consent decree. But the city knew that. The city admitted that it hadn't done what it was supposed to do there. But there are other aspects of the case that it did oppose. The plaintiff in that case claimed that he was being set up back in 1989 for the police department to get rid of him, and Judge Thompson at the time found the doubt that he hadn't proven that sort of case. So there really is, as far as we could tell, the district court was totally accurate in saying there is simply no evidence of any causation between any claimed adverse employment action and his. The district court does seem to believe that the denial of special assignments may constitute adverse employment action. Is that right? He made some reference to that, that it could constitute that. But that was litigated in the 1997 contempt action. In that case, the plaintiff claimed that he had been denied special assignments because of his taking military leave. He had the opportunity at that time to talk about if he claimed it was all being done because of his First Amendment rights, he had the opportunity to raise that, but he didn't. But he claimed that it was being done for that. Judge Reed at that time found against him, found that he had failed to carry his burden at that time to show that any of these actions that is denial of special assignments were because of his military service or his absence from military service, and that was adjudicated in 1997. The other things, the other, obviously we do agree that he did engage in some protected speech. With respect to the second element, they're simply that he has to show that there was adverse action taken by any of the defendants. And none of the individual defendants were involved in any of the incidents except for Lieutenant Donnelly, the presentation of the bullet incident. None of the individual defendants were involved in any of the actions that he claims caused him this great concern. No, we don't know who, I guess we don't know who painted the bullet or the target on his back. I have absolutely no idea. There was some 400 employees that had access. He had no idea. He didn't complain about it. You'd have to concede he was in a pretty hostile work environment. No, I don't think I can do that. Working as a police officer per se is working in a hostile work environment. I mean, it's a difficult job. I mean, you're out on the street. He complains that he wasn't given adequate cover. He brings up three instances over 23 years of employment. The first one that he talks about didn't even involve a lack of cover. It's where he was trying to get a drunk guy out of a bar at closing time, and he ended up tumbling down the stairs. He says the lack of cover was that they didn't charge him with obstructing and resisting when the plaintiff himself approved, in the record, the detention of the individual for civil protective custody and agreed that it wasn't appropriate to charge him. The other two incidents were he got a response, one, a lieutenant overseeing it, properly cut back the responding officer's Code 3 response to a normal response because there was no demonstrated need for an emergency response. The undisputed evidence is that was done in order to protect the city from liability, which the Code 3 response is a great source of liability. The undisputed evidence is that it was done in accordance with general orders. The third thing was in 1999. Those two are 1997. The third one is in 1999 when he claims he didn't get adequate response. There was officers in a nearby another crime scene. They didn't respond. He never asked them why they didn't respond. There's no evidence to show why they didn't. A paddy wagon went by, and he asked dispatch to send it back. The undisputed evidence is that there was a mix-up in dispatch at that time. That's why it didn't return. But he claims he was in fear and needed cover then. Another officer did respond. He got there in 15 minutes. But when he's claiming he's in great fear, Deputy Chief Robinson went jogging right by him within two feet. He never said anything to him other than hi. They exchanged greetings. But the incidents that he claims he's in danger for lack of cover, there's just no reasonable basis for his belief in those. What's the status of the intentional affliction claim? That has not been appealed. So your position is that any arguments as to that are waived at this point? Yes. The only issue I believe before this Court is the claim of First Amendment retaliation. The incidents where he claims he was threatened by other officers, I mean, some of them are just normal things. He's got a sergeant supervising other officers. Officers sometimes get angry at their supervising sergeant. He had the incident with Officer Reed where Sergeant Church knew at the time that this officer was already upset for personal reasons. He came in and told him something, and he already knew. Officer Reed got up from the table, backed away from Sergeant Church, and said, get that man away from me, and then left the room. He made no movement to harm Sergeant Church, no threat other than what I've just stated. It was not reasonable to believe he was really threatening that situation. Plus, Sergeant Church at the time, he took no disciplinary action at all against the individual. I mean, he is a sergeant. He could have initiated disciplinary action. He did nothing. The vest we've talked about, Lieutenant Donnelly incident with the bullet, there was an internal affairs investigation. He was disciplined. He was criticized, Lieutenant Donnelly, by three deputy chiefs for his actions, and he was disciplined. There's no evidence. He had no prior history of any violence, of any disagreement with Sergeant Church. He had nothing that occurred after that. The discipline that was imposed, as far as we know, took care of the problem. His unit was angry at Church, right? That was true. And it was because Church had criticized the unit, right? He wanted to do things one way, and the other officers in the unit wanted to do things differently. Let me rephrase the question. He was critical of the unit. He wrote a memorandum, internal memorandum, regarding the affairs, I believe. He wasn't praising the unit. They were angry at him because he was criticizing them in the internal memorandum. I don't know if that's why they were angry at him. I don't think there's any evidence of exactly why individuals in the unit were angry with him, but if it wasn't the best relationship, that's pretty apparent. But other than that, I don't know. I don't have any other evidence of that. Well, I mean, it seems to me that there is some, if you're talking about temporal proximity to speech, if you consider the internal criticism speech, and then you have a reaction to that, there's no other hypothesis that you've offered as to why this unit was mad at him. I don't have that. I don't think there's any evidence of the record as far as anger, other than the information stated by Lieutenant Donnelly at the presentation at the party. I'm not aware of any. Okay. You have about 40 seconds left. Thank you. I think the district court, our position is the district court properly determined this matter. There's no evidence of any link, any causational link between any act that was taken and any protected speech. The workplace violence complaints concerned only the plaintiff's condition and what had occurred with him, and there was no change in the policy as raised in their reply brief. It was simply that at his request, the plaintiff's request, he said the risk manager had a conflict of interest. He's the one that raised it.  At his request, he said that he actually did, and he didn't carry it out, but an investigation was done. Thank you. Church was a by-the-book officer. He wanted everything done correctly, and that's why he challenged the violations of federal military law by the city government. He almost 20 years of fighting them in federal court, most of the time winning because the city of Reno resented his, and they were opposed to his speech regarding federal military law for guardsmen and reservists. Causation is a question of fact. We believe that a jury could reasonably find the city was motivated to get rid of Mr. Church for his 20 years of protesting violations of federal military law in letters and in lawsuits. We believe a jury could find that Mr. Church's outspokenness made him extremely unpopular within the police department. We know that an evaluation was issued to him in 1997 in which he was graded down for his military service, which was opposed to the spirit of the law. He challenged that in a contempt citation. He won. But before he did that, he grieved that internally as he did everything else. The city of Reno said it's just fine. They can grade him down for his military absences when he was a reservist. The officer wrote tellingly in his evaluation that it was okay for his coworkers to be sarcastic, that he should expect his coworkers to be hostile and sarcastic to him because he took time off for military duty. One of the aspects of the case that I focused on was the denial of special assignments that could have resulted in additional pay. The other side just told us that that issue was brought to litigation in 1997 before Judge Reed, and it was determined that there was nothing to your client's claim about denial of special assignments. Do you have any answer to that? Yes, I do. It was in the form of a contempt citation, and the judge didn't feel that. And for contempt, there's a higher standard. The judge didn't feel that it was dispositive. However, he was the only sergeant who worked there 24 years that never got a special assignment, the only one. So he brought a contempt action against the city? That's correct. Denial of special assignments? It was part of the yes, it was part of it. And he did not prevail? He did prevail on another aspect in that. On this? On that particular. Is the special assignment. On the special assignments, he did not prevail. He prevailed on the issue of the bad evaluation. The city was ordered to rescind that. Thank you, counsel. All right. Thank you very much. The case is heard and will be submitted. The next case on the oral argument calendar is Wilson v. Fredericks.
judges: Trott,thomas, Hogan